(96 App. Div. 539.)

## THOMPSON v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. PLEADINGS—CONTRACTS—EVIDENCE—VARIANCE.

A complaint alleged an agreement between A. and defendant by which the latter was to transfer for a period of 15 years all cars for the supplies and products of not to exceed two blast furnaces located upon certain property belonging to the former, in consideration of which A. granted defendant a right of way; and further alleged that, "in furtherance of the agreement hereinbefore alleged," defendant entered into a written contract with B., and set out the contract, which provided that defendant would transfer all loaded cars to and from two blast furnaces operated by B., located on the property above referred to, and that all the rights and privileges granted by the contract should inure to and be binding on the successors of the respective parties during 15 years. The complaint then concluded that C., a lessee of A., had entered into possession and operation of the second furnace erected on the premises, and thereupon became entitled to the benefit of the switching rates provided for in the agreement between defendant and A. *Held*, that the effect of the allegations was that A. accepted the agreement with B. as a fulfillment and discharge of the obligations which defendant had assumed towards A. and C. could not introduce evidence to show that, in addition to defendant's contract to serve two furnaces operated by B., it was under obligations, by virtue of some independent contract, to serve another furnace operated by A. or some assignee, such as C.

2. SAME—CONCLUSIONS—EFFECT.

The allegation that C. became entitled to the benefit of the switching rights provided for under the agreement with defendant and A. was a mere conclusion, and did not affect the construction above put on the complaint.

3. APPEAL—INCONSISTENT CONTENTIONS.

A contention on appeal that plaintiff should have been allowed to establish by parol evidence a contract independent of a certain one set out in the complaint, upon which he could base his action, is inconsistent with another contention that he should have been allowed to introduce parol evidence to explain the contract set out in the complaint so as to justify the maintenance of an action by him upon it.

4. CONTRACTS—EXPLANATION BY PAROL.

A contract securing special switching rates for furnaces "operated by the party of the second part" upon certain property, but expressly limiting such rates to not to exceed two blast furnaces located upon the premises described, and extending the benefits and obligations of the contract to the successors and assigns of the respective parties, is not uncertain or ambiguous, but runs to the party of the second part and its assigns as the sole and exclusive beneficiaries, and cannot be extended by parol so as to embrace within its provisions a company which was not a party to it, nor an assignee or successor of a party.

5. SAME.

A concluding clause of the contract that if the furnaces, or either of them, should be operated by other parties than the party of the second part, such parties should have the benefit of the switching rates specified, during the term of the agreement, could not alter the above construction of the contract.

6. LANDLORD AND TENANT—RIGHT OF WAY THROUGH PREMISES—CONSENT OF TENANT.

Where a proposed right of way extended through demised premises, the lessee was a necessary party to the negotiations and contracts leading up to the procurement of that right of way.

Williams, J., dissenting.

Appeal from Trial Term, Erie County.

Action by James S. Thompson, as permanent receiver of the Union Ironworks of Buffalo, N. Y., against the Erie Railroad Company From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

George C. Riley, for appellant.
Adelbert Moot, for respondent.

HISCOCK, J.  During the years 1899 and 1900 the above-named Union Ironworks was engaged in operating a blast furnace in the southern part of the city of Buffalo.  Plaintiff, as its receiver, subsequently appointed, claims that during part of said period the defendant in violation of a contract refused to give it special switching rates in connection with the operation of said blast furnace, and compelled it to pay rates exceeding such special ones to which the corporation was entitled by the amount of about $18,000.  This action was brought to recover back such alleged excessive charges.

Upon the trial of the action plaintiff attempted to establish his right to recover by giving proof which was parol, and outside of and supplementary to certain written contracts which were put in evidence. The court excluded this evidence, and by such ruling was necessarily led to the result of dismissing plaintiff's complaint.  The arguments addressed to us upon this appeal relate to the correctness of this ruling made by the learned trial court.  We have reached the conclusion that it was correct, and that the judgment appealed from should be affirmed.

While the facts presented for our review are not especially voluminous or complicated, there is some tendency to confusion owing to the fact that entirely distinct corporations and interests appear by more or less similar names in the history of the negotiations and transactions which form the basis of the controversy now before us. Prior to 1895 the Union Iron Company of Buffalo was the owner of certain property in the southern portion of the city of Buffalo which was commonly known and described as "Union Ironworks."  Prior to said date it had leased a portion of said property to one Baird for a term of years expiring June 1, 1902.  Said lessee, having erected upon said premises so leased a single blast furnace, afterwards conveyed the same and all of his rights under said lease to the Buffalo Furnace Company, which entered into and continued in the possession of the property and the operation of said furnace.  In the latter part of the year 1895 negotiations were opened by the defendant or its predecessors to obtain a right of way for its railroad across the premises owned by the aforesaid Union Iron Company.  The proposed and desired right of way extended across that portion of the property which had been leased to and was then in the possession of the Buffalo Furnace Company, so that that company became a party to the negotiations and contracts subsequently made.  The negotiations resulted in a contract executed by the Union Iron Company,

owner of the premises, the Buffalo Furnace Company, lessee of part thereof, and the defendant's predecessors in title and interest which secured the desired right of way; also in a contract executed between the defendant and the Buffalo Furnace Company whereby the railroad company contracted to give special switching rates for two blast furnaces. These contracts were dated, respectively, October 4, 1895, and February 24, 1896. Concededly one furnished the consideration for the other, and they were evolved and formulated out of the same negotiations. The learned counsel for the respondent insists, and without much dispute by his adversary, that the two instruments constituted one entire and complete contract. The details of the contract granting the right of way are not material, but for the purposes of the discussion following it is desirable to consider with some degree of particularity the provisions of the switching contract. As already stated, it was made between the defendant and the Buffalo Furnace Company. The former contracts "that it will transfer and switch all loaded cars to and from the furnaces operated by the party of the second part [the furnace company] located in the southern part of the city of Buffalo, county of Erie, and state of New York, commonly known as the Union Ironworks." It is provided that the provisions of said agreement "shall be applicable exclusively to the switching and transfer of cars for the supplies and products of not to exceed two blast furnaces located upon the premises hereinbefore described; * * * that all the rights, obligations and privileges thereby [hereby] granted or conferred shall inure to and be binding upon the successors or assigns of the respective parties thereto [hereto] during the said fifteen years; and if the said furnaces or either of them shall be operated by other parties than the Buffalo Furnace Company said parties so operating shall have the benefit of the switching rates named therein [herein] during the term of said [this] agreement." The provisions limiting defendant's obligations for special rates to two blast furnaces and securing to the successors or assigns of the respective parties the benefits of said agreement furnish the subject for especial consideration in this controversy. At the time said contract was executed the Buffalo Furnace Company was only operating one furnace, and as a matter of fact it had not, down to the time of the trial, constructed or entered upon the operation of a second furnace upon the premises in question. Subsequent to the execution of said contract the aforesaid Union Iron Company of Buffalo leased a part or all of the remainder of its property outside of that theretofore leased to the Buffalo Furnace Company to Mr. Baird, who subsequently caused to be erected thereon an additional blast furnace, which, together with his leasehold rights, title, and privileges, he thereafter conveyed to the Union Ironworks, Buffalo, N. Y., which thereupon entered into possession of said premises and the operation of said second furnace so erected thereon. The plaintiff, as his title implies, has been appointed receiver of said last-named corporation.

Starting with the undisputed facts that the defendant, in consideration of the right of way conveyed to it, contracted to furnish special switching rates for two blast furnaces, and that the Buffalo Furnace

Company, with whom it made its written contract already referred to, at the date thereof was operating only one furnace, plaintiff claims that the second furnace, entitled to special rates as the result of the negotiations and contracts mentioned, is the furnace so erected by Baird and transferred to plaintiff's corporation as last above stated. Plaintiff does not claim that there is any contract in writing, which, measured and tested alone by its written terms, secured for the benefit of the blast furnace now possessed by him as receiver the desired special rates from defendant. Upon the trial, as already mentioned, he sought to introduce parol testimony which would successfully maintain and sustain his claim. In his brief upon this appeal the learned counsel for the appellant seems to argue that he was entitled to such parol evidence upon two theories. He seems to claim that he should have been allowed to give evidence of a contract between the original Union Iron Company and the defendant or its predecessors entirely independent of and distinct from the written contract between the defendant and the Buffalo Furnace Company, which would have secured from the defendant the benefit of special rates to plaintiff or his corporation for the blast furnace erected by their predecessor, Mr. Baird. And, in the second place, he urges that such parol evidence should have been allowed for the purpose of so explaining the meaning of the written contract between the defendant and the Buffalo Furnace Company as to remove the ambiguity which he alleges against it, and show that said contract applied to the blast furnace in the possession of plaintiff as the second of the furnaces to be served at special rates as therein provided.

We do not think that the argument and offers of plaintiff's counsel upon the trial of the case, as evidenced by the record before us, sustain his position now taken that he was then desiring and endeavoring to prove a contract, independent of the Buffalo Furnace contract, of which his client might take advantage, but that his position upon the trial was rather that of seeking to so enlarge and remove ambiguities from the language employed in the written contract with the Buffalo Furnace Company as to make it applicable to the furnace which he represented. Furthermore, we do not think that plaintiff's complaint authorized the proof or establishment upon the trial of a contract independent of and disconnected from the written one with the Buffalo Furnace Company. The complaint refers to the lease assigned to the Buffalo Furnace Company, and the operation by it of a blast furnace, and to the subsequent commencement of negotiations between the defendant and the Union Iron Company with reference to obtaining a right of way by the former over the lands of the latter. Said complaint then states that "it was finally agreed between the said, the Union Iron Company, of Buffalo, and the defendant herein, that in consideration of the agreement of the defendant to switch and transfer for a period of fifteen years from the said 4th day of October, 1895, all cars for the supplies and products of not to exceed two blast furnaces located upon the Union Ironworks property," the Union Iron Company would and thereafter did grant a right of way. It then alleges further "that thereafter, and on or about the 24th day of February, 1896, in furtherance of the agreement hereinbefore al-

ieged, the said defendant entered into a written contract with the said Buffalo Furnace Company, then operating a single blast furnace upon a part of the Union Ironworks property, of which' the following is a copy," and then follows a copy in full of the agreement with the Buffalo Furnace Company providing for two furnaces. It is then further alleged that the Union Ironworks, Buffalo, N. Y. (plaintiff's predecessor), "entered into the possession and upon the operation of the second furnace so erected upon said premises (being the one for which plaintiff now seeks the special rates), and thereupon became entitled to the benefit of the switching·rates provided for under the agreement of the defendant with the owner of said property, the Union Iron Company of Buffalo."

To summarize these allegations, we have it alleged that the Union Iron Company made a ·contract with the defendant to switch and transfer cars for the supplies and products of not to exceed two blast furnaces, and that subsequently, "in furtherance of the agreement," the defendant entered into the written contract with the Buffalo Furnace Company by which it agreed to serve at special rates two furnaces to be operated by said company. No contract certainly is set out in terms in the complaint except the one between the defendant and the Buffalo Furnace Company, and when the complaint alleges that in furtherance of the agreement made by the defendant with the Union· Iron Company to serve two blast .furnaces the former made the contract with the Buffalo Furnace Company by which it agreed to so serve·two blast furnaces to be operated by it, we think that in effect it alleges and sets forth that the contract made by the defendant with the Buffalo Furnace Company was a satisfaction and carrying out of the agreement alleged to have been made by the defendant and the Union Iron Company; that the effect ·of all of these allegations is that the defendant agreed in writing to serve the two furnaces operated by the Buffalo Furnace Company as the ones which it is alleged to have contracted with the Union Iron Company to serve. We think that the language used in the complaint that the contract made by the defendant with the Buffalo Furnace Company was "in furtherance" of the agreement made with the Union Iron Company implies that the Union Iron Company, although not a party to the record, assented to and acquiesced in the contract by the defendant with the Buffalo Furnace Company, and accepted the latter contract as a fulfillment and discharge of any obligations which the railroad company had assumed in the way of giving special rates to it, the Union· Iron Company, for two furnaces. We think that all of these allegations prevented and prohibited plaintiff ·from attempting to prove that, in addition to defendant's contract to serve two furnaces operated by the Buffalo Furnace Company, it was, as the result of the negotiations and transactions in question, under obligations, by virtue of some other and independent contract, to serve another furnace operated by the Union Iron Company, or some assignee or lessee other than the Buffalo Furnace Company. The defendant was very careful to limit its obligations to two furnaces. "In furtherance of"—that is, in accordance with—the contract between it and the Union. Iron· Company, defendant assumed obligations to-

wards the two furnaces which might be constructed and operated by the Buffalo Furnace Company, and we do not think that either the Union Iron Company or any subsequent assignee or lessee under the allegations of plaintiff's complaint could claim that there was any distinct and separate agreement binding defendant to some other furnace.

We do not think that the clause contained in the complaint that plaintiff's predecessor and assignor erected a second furnace upon said premises, "and thereupon became entitled to the benefit of the switching rights provided for under the agreement with the defendant and the owner of said property, the Union Iron Company of Buffalo," adds to the scope of the complaint or bars the views above outlined. The clause in question states a mere conclusion, and it does not contradict the theory that the agreement made by the defendant with the Union Iron Company of Buffalo for switching rights was finally embodied and found expression in the written contract executed with the Buffalo Furnace Company. Moreover, the suggestion now advanced in behalf of plaintiff that he should have been allowed to establish by parol evidence a contract independent of that made with the Buffalo Furnace Company upon which he could base this action, seems to us to be at variance and inconsistent with his other proposition that he should have been allowed to introduce parol evidence to so explain the contract made with the Buffalo Furnace Company that it would cover the alleged second furnace erected by his predecessors, and justify the maintenance of this action.

We therefore pass to the second proposition urged by the plaintiff—that he should have been allowed upon the trial to introduce parol evidence to show what was said and took place in the negotiations preceding the execution of the written contracts, in order, as stated upon the trial, "to establish and explain the ambiguity which is contained in the switching agreement as to the identity of the second furnace meant and intended by the terms of the switching agreement to which said (this) switching agreement was to apply," and for the purpose of explaining the "meaning of the expression used in the switching agreement which describes the second furnace referred to, and the circumstances under which that clause—the last clause in the switching agreement—came to be inserted." The learned trial justice, in answer to these contentions and offers, stated that in his judgment the benefits of the written contract referred to were confined to furnaces operated by the Buffalo Furnace Company, its successors or assigns, on the Union Ironworks property. It may be stated here that plaintiff's counsel in his brief expressly disclaims that he is entitled to succeed in this action as an assignee of the Buffalo Furnace Company under those provisions in the lease or contract which extended the benefits thereof to the assigns and successors of the parties. The claim to recover is based upon the alleged rights secured by the contract to plaintiff or his predecessors and assignors directly, and not in any way derived from or coming through the Buffalo Furnace Company. We may perhaps best test the correctness of plaintiff's claim that he should have been allowed to intro-

duce this parol evidence for the purpose of explaining and enlarging the written contract, first, by considering the interpretation and construction of the contract which it would have been necessary for him to secure in order to make his evidence of any avail or benefit; and, second, by noting some things which without any ambiguity or uncertainty are provided for by the contract as it stands and reads without any explanations or enlargement. We think that when this is done it will appear that, if plaintiff had been allowed to introduce his parol testimony and secure such a construction as he desires, the contract as originally written would not have been legitimately explained or elucidated, but would have been replaced by an entirely new and different one. In no uncertain or ambiguous terms requiring or permitting explanation the contract by the defendant runs to the Buffalo Furnace Company as the sole and exclusive party of the second part. It, in effect, secures the special switching rates for furnaces "operated by the party of the second part," located upon the property known as the Union Ironworks, but such rates are expressly and exclusively made "applicable to  * * *  not to exceed two blast furnaces located upon the premises thereinbefore [hereinbefore] described." The obligations assumed and benefits conferred are made binding upon and secured to the successors and assigns of the respective parties. The advantages of the special rates upon the face of the contract are thus clearly secured to the Buffalo Furnace Company, its successors and assigns. In order to sustain his claim that his cause of action was defeated by the exclusion of his parol evidence to supplement or explain this contract, plaintiff must convince us that by it he would have become entitled to and would have secured a construction of the contract extending it and making it applicable to a furnace erected and operated after the contract was executed by one who was neither a party to nor an assignee or successor of a party to the contract; that the contract not only secured benefits to a party not named in it, or in privity with its beneficiary, but covered a furnace expressly outside of those provided for. We think that plaintiff's claim under the contract is too shadowy and uncertain to succeed, and that a construction such as he desires, even if authorized by the evidence, would be beyond any limits yet reached in amplifying written instruments through the process of detecting and then explaining ambiguities in them.

We do not overlook the fact that the learned counsel for plaintiff upon the trial seemed especially to claim the right by parol evidence to explain the final clause in the written contract which provides that, if the furnaces contemplated should be operated by parties other than the Buffalo Furnace Company, such parties so operating should have the benefit of the switching rates named. This clause may be subject to the criticism of being a superfluous and unnecessary addition to the one providing that the contract should apply to assigns and successors of the parties, but we do not think that it will sustain the burden of holding up plaintiff's claims and contentions. We do not think that it draws the contract away from the fundamental proposition that the furnaces to be served with special rates were two, which, in the first instance, at least, would be operated by the Buffalo Fur-

nace Company; and were not two or one which might be erected and operated by some one not in any manner connected with or claiming under said company. The object of the draftsman in formulating said clause probably was to emphasize the idea that the benefits of said contract should be extended to any person who might be operating a furnace as assignee of the corporation named.

It is urged by way of general consideration in favor of plaintiff's position that the benefit of any special rates granted by defendant ought to be secured to the Union Iron Company and its lessees like plaintiff, because it was the owner of the premises through which defendant secured its right of way. In answer to this it is to be remembered that the proposed and desired right of way extended through premises then leased for a long term of years to the Buffalo Furnace Company. It was, therefore, a necessary party to the negotiations and contracts. While the evidence does not throw much light upon the subject, we may easily believe that the Union Iron Company was satisfied to secure its tenant's consent to the right of way by allowing it to take from the railroad company the contract for special rates. There were various ways in which the landlord in its dealings with the tenant might utilize and secure for its ultimate benefit the advantages of the contract thus taken.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except WILLIAMS, J., who dissents.